IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY YANAHAN, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO BANK, N.A., <br><br> Defendant. | Case No. 24-cv-01042 <br><br> Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Timothy Yanahan ("Yanahan" or "Plaintiff") has sued Defendants Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo"), bringing claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") and for breach of contract, promissory estoppel, fraudulent misrepresentation. Before the Court now is Defendant's motion to dismiss [27]. For the reasons stated herein, Defendant's motion is granted in part and denied in part.

### I. Background

Unless otherwise noted, the following factual allegations taken from the operative complaint [23] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

Plaintiff took out a mortgage from Wells Fargo for a residential property and subsequently defaulted on that mortgage. [23] ¶¶ 7-8. Wells Fargo attempted to assist Plaintiff by having him participate in the "Home Affordable Mortgage Program ("HAMP"). [23] ¶ 10.

1

HAMP was a program created by the federal government in response to 2008 recession which required the Secretary of the Treasury to "implement a plan that n that seeks to maximize assistance for homeowners and . . . encourage the servicers of the underlying mortgages . . . to take advantage of . . . available programs to minimize foreclosures." 12 U.S.C. § 5219(a). As a part of the program, the Treasury Secretary set aside up to $50 billion to induce lenders to refinance mortgages with more favorable interest rates to prevent additional foreclosures. [23] ¶ 14. One of those lenders was Wells Fargo, who agreed to identify homeowners who either were in or were likely to soon be in default, and to modify their loans pursuant to the program. [23] ¶ 16. Participating lenders like Wells Fargo were to evaluate loans for modification using a formula that assessed whether the financial return for investors would be better than allowing the borrower to default. [23] ¶ 22.

Wells Fargo offered Plaintiff certain loan modifications pursuant to HAMP. [23] ¶ 29. However, a calculation error in the software that Wells Fargo used to determine modification eligibility caused Wells Fargo to erroneously deny a more affordable loan modification to Plaintiff. [23] ¶ 32. Additionally, Wells Fargo employees lost Plaintiff's loan modification paperwork on more than one occasion, causing Plaintiff to have to resubmit documents and restart the modification process. Ultimately, Plaintiff was offered a modification that would have resulted in his monthly mortgage payment being reduced by just $150. Plaintiff alleges he was also told, falsely, by Wells Fargo employees that he was required to default on his payments in order to be considered for a loan modification. [23] ¶ 70.

On September 24, 2018, Wells Fargo sent Plaintiff a letter informing him that, because of Wells Fargo's own errors, Plaintiff was wrongly denied a loan modification. [29-1].[1] The letter also included a check for $15,000, and an offer to mediate if Plaintiff did not feel that the $15,000 provided sufficient redress. [29-1]; [23] ¶ 54. Plaintiff alleges that "[a]s a further incentive to cause Plaintiff to agree to mediation, Wells Fargo informed Plaintiff that it would not raise any statute of limitations defense." [23] ¶ 55. The parties engaged in unsuccessful mediation.

On December 5, 2018, a putative nationwide class action was filed against Wells Fargo alleging various forms of misconduct in relation to Wells Fargo's management of the HAMP process. *See* [23] ¶ 57; *Herandez v. Wells Fargo, N.A.*, 18-cv-07354 (N.D. Cal.) (hereinafter "*Hernandez*").[2] On January 29, 2020, the *Hernandez* court granted preliminary approval of a nationwide class but denied certification of various state subclasses for violations of their respective state consumer laws and state tort claims. [23] ¶¶ 59-61. Plaintiff excluded himself from the *Hernandez* class action settlement. [23] ¶ 62.

Plaintiff brought this action on February 6, 2024, over five years and four months after receiving the letter alerting him to Wells Fargo's error.

## II. Standard

---

[1] The Court considers the contents of the letter because Plaintiff incorporated it by reference in his complaint. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). ("In effect, the incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment.").

[2] Plaintiff urges that Court take judicial notice of the complaint in *Hernandez* and Defendant does not oppose. [23] ¶ 57.

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### III. Analysis

Wells Fargo argues that three of Plaintiff's four counts are barred by the statute of limitations. Separately, Wells Fargo argues that Plaintiff has failed to state a claim for each count for independent reasons. The parties agree that Illinois law governs each claim. The Court addresses each argument below.

#### A. Statute of Limitations

Wells Fargo argues that Plaintiff's claims for promissory estoppel (Count II), violations of the ICFA (Count III), and fraudulent misrepresentation (Count IV) are all barred by the statute of limitations. At the onset, the Court notes that the statute of limitations is traditionally an affirmative defense not appropriately resolved through motion practice based solely on the pleadings. *Verkuilen v. Bus. Info. Grp., Inc.*, No. 14-C-400, 2015 WL 12991189, at *2 (E.D. Wis. Dec. 7, 2015). "[C]omplaints need not anticipate and attempt to plead around defenses." *United States v. N. Tr. Co.*, 372 F.3d 886, 888 (7th Cir. 2004). Thus, the Court only dismisses a Plaintiff's claims on this basis if "everything necessary to satisfy the Defendants' statute of limitations defense" is contained in Plaintiff's complaint. *United States v. Aniemeka*, No. 17-CV-4011, 2021 WL 949344, at *1 (N.D. Ill. Mar. 12, 2021).

The parties appear to agree on the relevant limitations periods for each claim. Actions for promissory estoppel and fraudulent misrepresentation are governed by a five-year statute of limitations, and ICFA claims are subject to a three-year limitations period. 735 ILCS 5/13-205 (promissory estoppel and fraudulent misrepresentation); *Schrott v. Bristol Myers Squibb Co.*, 2003 WL 22425009, at *3

(N.D. Ill. Oct. 23, 2003), *aff'd*, 403 F.3d 940 (7th Cir. 2005) (ICFA claims). Under Illinois law, the limitations period begins to run when a plaintiff learns that "facts exist to authorize the bringing of a cause of action." *Martin v. Goodrich Corp.*, 2025 WL 287257, at *9 (Ill. Jan. 24, 2025). Wells Fargo informed Plaintiff that they erroneously failed to approve him for a loan modification on September 24, 2018. Thus, barring any arguments to the contrary, the applicable statutes of limitations should have time-barred Plaintiff's claims for promissory estoppel and fraudulent misrepresentation on September 24, 2023, and his claim under the ICFA on September 24, 2021. Plaintiff makes several arguments as to why the statutes of limitations should not bar his claims.

1. *American Pipe*

First, Plaintiff argues that his claims were tolled when *Hernandez* was filed in federal court. Plaintiff relies on the principle set forth in *American Pipe,* where the Supreme Court held that "that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974). The Supreme Court reasoned that such a rule was necessary because in its absence, all potential class members would be incentivized to file motions to intervene in the class action to guard against the risk of an adverse outcome. *Id*. at 553. This would lead to a flood of duplicative motions which would run contrary to Rule 23's goals of promoting efficiency and judicial economy. *Id*. However, when the applicable limitations period is defined by

6

state law, state rules determine the tolling effect of a putative class action. *See Chardon v. Fumero Soto*, 462 U.S. 650, 661 (1983). And because the Illinois Supreme Court has specifically held that the pendency of a federal class action does not toll an individual's claims under Illinois law, *see Portwood v. Ford Motor Co.*, 701 N.E.2d 1102, 1104 (1998), Plaintiff cannot rely on *American Pipe* to protect his claims here. *See also Hudgins v. Bd. of Educ. of City of Chicago*, No. 23 C 218, 2023 WL 4303004, at *7 (N.D. Ill. June 30, 2023) (Illinois state claims brought in federal court not tolled by pendency of federal class action).

2. *Equitable Tolling*

Plaintiff next argues the doctrines of equitable tolling save his claim. "[T]he doctrine of equitable tolling permits a court to excuse a plaintiff's failure to comply with a statute of limitations where 'because of disability, irremediable lack of information, or other circumstances beyond his control,' the plaintiff cannot reasonably be expected to file suit on time.'" *Klancir v. BNSF Ry. Co.*, 40 N.E.3d 438, 444 (Ill. App. Ct. 2015) (citations omitted). Plaintiff has identified no disability, lack of information, or circumstances beyond his control that could have prevented him from filing within the statute of limitations, so this argument fails.

3. *Estoppel and Waiver*

Plaintiff also argues both that Wells Fargo should be equitably estopped from pursuing a statute of limitations defense, and that Wells Fargo waived its defense. "'[E]quitable estoppel' and 'waiver' are two distinct concepts, though they have similarities and are sometimes used interchangeably. A waiver is a voluntary

relinquishment of a known right, claim or privilege, whereas an equitable estoppel may arise even though there was no intention on the part of the party estopped to relinquish any existing right." *Vaughn v. Speaker*, 533 N.E.2d 885 (Ill. 1988) (citations omitted). To establish estoppel, a party must demonstrate that "(1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other person intended or reasonably expected that the party claiming estoppel would act upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof." *Steinmetz v. Wolgamot*, 995 N.E.2d 338, 349 (Ill. App. Ct. 2013) (citing *Geddes v. Mill Creek Country Club, Inc.* 751 N.E.2d 1150, 1157 (Ill. App. Ct. 2001). "Under Illinois law, equitable estoppel does not give a plaintiff the entire limitations period measured from the date the defendant discontinues the conduct that lulled the plaintiff into inaction," and the doctrine does not apply if "defendant's conduct ended within ample time to allow a plaintiff to avail himself of his legal rights under the statute of limitations. *Butler v. Mayer, Brown & Platt*, 704 N.E.2d 740, 745 (Ill. 1998).

Similarly, under Illinois law, "[t]he right to invoke a statute-of-limitations defense can be expressly waived or waived by [implication]." *Hassebrock v. Ceja Corp.*, 29 N.E.3d 412, 423 (Ill. App. Ct. 2015). An express waiver must be "explicit enough to

8

demonstrate that any potential waiver of the statute of limitations was sufficiently explicit, knowing, voluntary, and intentional." *Hovde v. ISLA Dev. LLC*, 2021 WL 4477912, at *7 (N.D. Ill. Sept. 30, 2021), *aff'd*, 51 F.4th 771 (7th Cir. 2022). "An implied waiver . . . arise[s] where the party against whom waiver is asserted pursues a course of action or acts in such a way that demonstrates his intention to waive a right or is inconsistent with any intention other than waiving the right." *Klancir*, 40 N.E.3d at 446. "[T]he act relied on to constitute the waiver must be clear, unequivocal, and decisive." *Dika Homewood, L.L.C. v. OfficeMax, Inc.*, 2021 WL 3633942, at *5 (N.D. Ill. Aug. 17, 2021).

At the pleadings stage, the Court is bound by the facts contained in Plaintiff's complaint. Plaintiff has alleged that a representative of Wells Fargo explicitly told him that it would waive its statute of limitations defense. The complaint does not indicate who from Wells Fargo said that or if they gave any indication of how long such a waiver would last.[3] The complaint also does not indicate how long the mediation that gave rise to this statement lasted, which would be relevant to determining how long Plaintiff could have relied on any equitable estoppel. [23] ¶¶ 55-56; *see Butler*, 704 N.E.2d at 745. Because not "everything necessary to satisfy Defendants' statute of limitations defense" is contained in the complaint, Defendant's motion to dismiss on this basis is denied. *Aniemeka*, 2021 WL 949344, at *1.

### B. Breach of Contract (Count I)

---

[3] The Court notes that although it does not appear Illinois courts have addressed the issue, most states hold that an indefinite or permanent waiver of the statute of limitations defense is unenforceable because it is against public policy. *See Hovde*, 2021 WL 4477912, at *4 n.10

9

Wells Fargo argues that Plaintiff's breach of contract claim fails because he has not alleged the existence of a valid and enforceable contract that would require Wells Fargo to evaluate or offer a loan modification. The Court agrees. "In Illinois, an offer, an acceptance and consideration are the basic ingredients of a contract." *Golbeck v. Johnson Blumberg & Assocs.*, LLC, 2017 WL 3070868, at *5 (N.D. Ill. July 19, 2017). "A general allegation that a contract exists without a statement of supporting facts is a mere legal conclusion." *BMO Harris Bank, N.A. v. Porter*, 106 N.E.3d 411, 422 (Ill. App. Ct. 2018).

Plaintiff alleges that "Wells Fargo made a concrete offer to Plaintiff which Plaintiff performed all that was required by him." [23] ¶ 80. But to the extent any offer was made at all, it was only an offer for Plaintiff to *apply* for a loan modification, and courts have repeatedly held that such offers are not contracts. *Lesniak v. Bank of Am., N.A.*, 169 F. Supp. 3d 766, 771 (N.D. Ill. 2015) ("Plaintiff's assertion that [the bank] promised her a HAMP modification cannot be reconciled with her allegations that [the bank] denied her request for a HAMP modification"); *FHLMC v. Gilbert*, 656 F. App'x 45, 47 (6th Cir. 2016) (contract did not exist where bank invited plaintiff to apply for a loan modification and the application was denied); *De Vera v. Bank of Am.*, N.A., 2012 WL 2400627, at *2 (E.D. Va. June 25, 2012) ("[A]n application for HAMP loan modification is not a valid contract").

Plaintiff argues in his briefing that he is in possession of "written communications exchanged between the parties to demonstrate the existence of" an enforceable contract. [37] at 11. To the extent those facts are not contained in the operative

10

complaint, the Court will not consider them. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.,* 631 F.3d 436, 448 (7th Cir. 2011) (it is an "axiomatic rule that a plaintiff may not amend his complaint in his response brief"). And Plaintiff's complaint does not otherwise allege the existence of a valid contract or identify the existence of any contractual terms that Wells Fargo may have breached. Count I is dismissed without prejudice.

### C. Promissory Estoppel (Count II)

Wells Fargo argues that Plaintiff's promissory estoppel claim fails because Plaintiff has not alleged the essential elements of the claim. Under Illinois law, to state a promissory estoppel claim, a plaintiff must allege that "(1) defendant[] made an unambiguous promise to [him]; (2) [he] relied on that promise; (3) that reliance was expected and foreseeable by defendant[]; and (4) [he] relied on the promise to [his] detriment." *Tyler v. Bank of New York Mellon*, No. 19 CV 7863, 2020 WL 2735367, at *10 (N.D. Ill. May 26, 2020). Defendant specifically argues that Plaintiff failed to allege both that Wells Fargo made an unambiguous promise regarding any loan modifications, and that Plaintiff relied on that promise. Defendant also cited one case where a judge dismissed a plaintiff's promissory estoppel claim based on near-identical conduct. [28] at 14 (citing *Calhoun v. CitiMortgage, Inc.*, No. 13 C 8042, 2014 WL 274122, at *4 (N.D. Ill. Jan. 24, 2014), *aff'd*, 580 F. App'x 484 (7th Cir. 2014).

Plaintiff fails to respond substantively to Wells Fargo's argument. *See* [37] at 11-12. That is reason alone to grant dismissal of Count II. *See Lee v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053–54 (7th. Cir. 2019) (holding that an

11

otherwise sound complaint can be subject to dismissal "when a party fails to develop arguments related to a discrete issue or when a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss."). But Wells Fargo is also right on the merits — Plaintiff has failed to allege any unambiguous promise that Wells Fargo made and failed to allege facts showing that any such promise induced any action on his behalf. Count II is dismissed without prejudice.

**C. ICFA (Count III)**

Wells Fargo argues that Plaintiff's ICFA claim should be dismissed because it sounds in fraud and does not meet Rule 9(b)'s particularity requirements. The Seventh Circuit has held that when an ICFA claim alleges that a Defendant mislead, misrepresented, and defrauded a consumer, Rule 9(b)'s heightened standard applies. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). In his ICFA claim, Plaintiff alleged that "Defendant intended Plaintiff to rely on its deceptive actions, and Plaintiff was damaged as a result of Defendant's conduct." [23] ¶108. This is the kind of allegation that must satisfy Rule 9(b)'s heightened pleading requirements, and again, Plaintiff failed to respond to Defendant's arguments.

However, "[o]n its face . . . the [ICFA] covers several types of conduct in addition to fraud." *Publications Int'l, Ltd. v. Leapfrog Enterprises, Inc.*, No. 01 C 3876, 2002 WL 31426651, at *6 (N.D. Ill. Oct. 29, 2002). A plaintiff can also state a claim under the ICFA simply by alleging an *unfair* business act, and such allegations are not required to meet Rule 9(b)'s standard. *See Camasta*, 761 F.3d at 737, *Maxwell as Tr. for Est. of Garcia v. Wells Fargo Bank, N.A.*, No. 20 C 2402, 2021 WL 1209023, at *7

12

(N.D. Ill. Mar. 31, 2021). Thus, Plaintiff's failure to respond to Defendant's argument regarding Rule 9(b) serves only as a waiver as to the allegations in Plaintiff's ICFA claim that allege that Defendant acted fraudulently. Plaintiff's claim that Defendant acted unfairly in violation of the ICFA by "fail[ing] to honestly and effectually implement HAMP guidelines" can survive dismissal.

"In determining whether a given act or course of conduct is unfair, Illinois courts look to three factors: '(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers.'" *Maxwell*, 2021 WL 1209023, at *7 (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Saccameno v. Ocwen Loan Servicing, LLC*, 372 F. Supp. 3d 609, 630 (N.D. Ill. 2019).

Wells Fargo argues that it has not engaged in any unfair conduct because it made a simple mistake, and when it discovered the mistake, it paid Plaintiff $15,000 with no strings attached. But numerous courts in this district have held a plaintiff can predicate an ICFA unfairness claim on a violation of HAMP. *See Maxwell*, 2021 WL 1209023, at *7 (collecting cases). And Wells Fargo cites to no authority to support its proposition that its attempt to mitigate Plaintiff's damages bears on whether the conduct that caused Plaintiff's damage was unfair. The Court thus finds that Plaintiff

13

has sufficiently alleged that Wells Fargo engaged in an unfair practice as contemplated by the ICFA.

Wells Fargo also argues that Plaintiff failed to allege that Wells Fargo caused his injury. The Court does not agree. Plaintiff alleges that because of Wells Fargo's calculation errors, Wells Fargo did not propose an affordable loan modification, and because Plaintiff did not receive an affordable loan modification, Wells Fargo foreclosed on Plaintiff's home. Wells Fargo argues that even if Plaintiff had been offered the loan modification he was entitled to, he may still have been unable to save his home. But that argument goes beyond the facts contained in the complaint and it is thus an inappropriate basis on which to decide this claim at the pleadings stage. Count III thus survives dismissal, but only as to Plaintiff's claim that Wells Fargo engaged in unfair practices.

**D. Fraudulent Misrepresentation (Count IV)**

To state a fraudulent misrepresentation claim, Plaintiff must plausibly allege "1) a false statement of material fact; 2) known or believed to be false by the party making it; 3) intent to induce the other party to act; 4) action by the other party in reliance on the statement's truth; and 5) damage resulting from that reliance." *Lesniak*, 169 F. Supp. 3d at 772-73. These elements must be pled "with particularity." *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016).

Wells Fargo argues that Plaintiff has not identified any false statements of material fact, let alone facts that were known or believed to be false at the time Wells Fargo made them. In his opposition, Plaintiff argues that his allegation that he "was

14

incorrectly advised by one or more employees of Defendant that he would need to default on his payments for him to be considered for a loan modification" is sufficient to state a claim. [23] ¶ 70. Notwithstanding that Plaintiff does not allege with any specificity who told him this, or when, or that whoever made it knew or believed that such a statement was false at the time it was made, Plaintiff had *already* defaulted on his loan his mortgage by the time he decided to consult with Wells Fargo about a loan modification. *See* [23] ¶¶ 8, 9. Plaintiff does not allege that he *could* have gotten out of default if not for Defendants' statements, so it cannot be said that Plaintiff has alleged that any damage resulted from those statements.

Plaintiff also attempts to fall back on his allegation that "Defendant falsely indicated that its loan modification process was staffed by well-educated and trained staff, when this was not the case." [37] at 17. The Court is disinclined to find that an "indication" about Defendant's subjective appraisal of its staff education and training is statement of fact at all. But even if it were, Plaintiff has not identified who made the statement or when it was made, as Rule 9(b) requires. Nor has Plaintiff alleged that he relied on that statement. Plaintiff has also not alleged facts showing any damages resulted from his reliance on that statement. Rather, Plaintiff alleges that he was damaged as a result of the erroneous calculation that deprived him of an affordable loan modification.

Plaintiff also relies on *Wigod*, where the plaintiff alleged that Wells Fargo issued her a four-month trial modification, "under which it agreed to permanently modify the loan if she qualified under HAMP guidelines." *Wigod v. Wells Fargo Bank, N.A.*,

15

673 F.3d 547, 554 (7th Cir. 2012). The plaintiff there alleged that the agreement was a promise, and that Wells Fargo knowingly broke that promise to her and thousands of potential class members. *Id*. at 555. This is unlike Plaintiff's allegations here—Plaintiff has identified no knowingly false statement of fact that Wells Fargo made to him and no damages that resulted from such a statement. Instead, Plaintiff alleges that his damages arose from a software error. Count IV is dismissed with prejudice.

IV. **Conclusion**

For the stated reasons, Defendant's Motion to Dismiss [27] is granted in part and dismissed in part. Counts I, II, and IV are dismissed. Count IV, fraudulent misrepresentation, is dismissed with prejudice. The Motion is denied as to Count III.

E N T E R:

Dated: February 25, 2025

MARY M. ROWLAND
United States District Judge